I'll turn to the last case on this morning's calendar for argument, Saliba v. Securities and Exchange Commission. Each party will have 15 minutes. Good morning. I'm Alan Wolper. I'm here on behalf of the appellant, Trevor Saliba. I'd like to reserve three minutes for rebuttal, if I may. At the outset, your honors, I'd like to address the question that was posed to us by the docket clerk the other day, whether or not the commission's decision represents final agency action from which an appeal can be taken regarding the 8210 violation. And the answer is yes and no. You really have to parse the decision here. There were three separate bases that were articulated by the commission to impose a permanent bar on Mr. Saliba. The first was that Mr. Saliba allegedly violated interim restrictions that were imposed on him by FINRA in connection with his effort to acquire the firm. Secondly, they barred him for backdating certain compliance documents. Those are both standalone, if you will, rule 2010 violations. There's no 8210 issue there. The third basis was, in fact, an 8210 violation, but there were three, if you will, sub bases for that. The first of which is that Mr. Saliba allegedly gave false testimony about his use of computers for his firm's business. Second, that he failed to provide to FINRA all the computers that he was using for his firm's business. And third, that he provided false supervisory memos. What the commission did was remand only that third issue. We understand that. Here's the source of my question on this point. If we come up with an appeal from the district court, this is clearly not a final judgment. Because for the final judgment rule, you need all issues, all parties to have been resolved, and the pendency of this third thing that's gone back would defeat the final judgment. Are you saying that the final judgment rule is not the same thing as the final order rule for the agency? Our position, your honor, is that with regard to the issues that are at hand today, we are indeed working from a final agency order. There's nothing left to happen there other than the fact that there'll be another commission decision in connection with the remand, but that remand will not touch upon any of the issues that are before the court today, even though they both deal with a Rule 8210 violation. They just deal with a Rule 8210 violation in a different context. But that doesn't answer the question, really, because even if this were a standard district court, there could be decisions that the court's not going to revisit on several issues that they would like to appeal, but there's still an open issue, like of damages or attorney's fees or whatever it might be. Damages would be the better analogy. On a third issue that nobody is fighting about, but we still say it's not a final judgment. And we don't have the words final judgment, but 18 U.S.C. 78 YA does say final order. Now, it does say a final order. It doesn't say the final order. Are you saying that as long as you've got a final order on some issues, that that's the end of it? And on top of that, you've got the veneer that if we don't allow this appeal, I'm not sure that these issues can ever be appealed. Because you have to appeal within, is it 30 days or something after a ruling? And after 30 days, if there is no such appeal, further rulings won't deal with these issues again. So those are all questions I would love to hear your answer to. Well, frankly, that's the conundrum in which we found ourselves when it came time to decide whether we appeal now or appeal after the remand. And the decision was made that with regard to the issues that are the subject of our appeal, the agency's order was in fact final. There may be something else that happens in connection with the remanded issue, but it's got no impact whatsoever on what we're asking this court to resolve. So your honor's focus on the article A versus B, I think is an important distinction to make here. Because again, if you segregate out the one issue that has been remanded versus the other issues that are final, then we are facing a circumstance that is ripe for discussion with the court. Do you agree that if we were to say this isn't final and we're not going to hear it, that Saliba might not have the ability to appeal it again? Well, I think that... Because that order is final? I mean, could anybody go back now and rethink those orders? Or are they truly final? Or are they like in a district court that says, I'm going to make this ruling or that, but nothing is final until I give you the final judgment? I believe, your honor, that this court should deem as a matter of policy, because we don't want to put Mr. Saliba in a situation where he loses his right to appeal because of the manner in which the commission dealt with its decision. Of course, we all agree with that. So we cannot have a circumstance where the consequence of the decision that Mr. Saliba has somehow waived his ability to appeal the commission's decision. Now, this is, I guess, a very elementary question to ask. This issue must come up all the time with respect to review of orders that are partial. Is there case law on the point? There is not, your honor. And ironically, the answer was not an easy question. I don't want to bore the court with the effort. Not only was it not an issue, but you really didn't even brief it. Right. And for what it's worth, the commission didn't object either. So we filed... Nobody briefed. Right. So it was an issue. It was a situation where I think both parties to the appeal were operating under the safe and reasonable presumption that the issues that are before the court are right for presentation. Is that because that is the custom in that area of practice? It's not necessarily the custom. I think it's the right thing to do because they're done. I mean, this is not any scientific area. It's just a matter of we have taken all steps to exhaust our administrative remedies. And when you look at the cases that are on the record regarding this issue, whether somebody has appealed too prematurely from an agency order, it's largely in the context of a party who has failed to exhaust his or her administrative remedies. Could somebody go back to the commission now and say, you've still got the remedy for that third issue still open. And as long as you're considering remedies, we'd like you to consider the remedies on the other two issues as well again. Could that be done? Or would the commission say, I'm awfully sorry, but that order was issued more than 30 days ago? No, there's no procedural avenue to go back to the commission and ask the commission to revisit its findings on that. I guess analogizing to the final order rule, if the judge has said, I'm ruling that you're going to win on issues one and two, let's go to trial on three. You go to trial on three, and parties still make motions as to one and two. I mean, even though the judge is so ruled. Because until the final order is issued by the judge, one and two is still theoretically on the table. But you're saying that's not true here. I think it would not be true with regard to the issues that are, if you will, final. The issue that the commission remanded back to FINRA, to the National Adjudicatory Council, that's right for reconsideration by the SEC. When the NAC, the National Adjudicatory Council, issues its decision on remand, the SEC will take it up again and decide whether FINRA did or didn't sufficiently explain the basis for that sanction that it imposed. But that's got nothing to do with what's the court here with regard to the bars that I'm prepared to discuss. So that raises one other issue. Let's say that the ruling on those first two issues is final, but the third issue is not, because there's still a remand out there for the damages to be calculated. Even, are you saying that even the commission has no authority now to rethink one and two? I mean, once the commission comes to the damages on the third issue and starts getting into the evidence again, you're saying the commission would not have the authority to say, you know, we're getting back into the weeds. This case looks a little different now that I see new evidence. I'm going to rethink my ruling previously on one and two. Could the commission do that or not? Could it? In a conceptual sense? Would it have the jurisdiction to rethink that? That's really kind of a critical question. I appreciate that. And I think there's a degree of speculation baked into that question. I think the commission could do whatever the commission wants. I think the better question is, would the commission do that? I don't believe it would. I believe the commission has dealt all its cards with regard to those issues and has one issue left that it wants to deal with, which is whether Finnery can adequately explain the rationale for the imposition of the bar for that one 8210 violation. That bar is sort of like a third death sentence. And so why would the commission bother to do that if it really was all over? Well, because FINRA, the decision that was appealed to the SEC from FINRA, contained three separate findings of bars, right? So the commission has to deal with what it is he's out of the industry, case finished. And that's what gives me my concern. Does the commission's action in making a point of remanding that piece mean the door is ajar? As you say, the commission can do what it wants to. Does that mean that the door really is ajar for the whole case or not? I think it's only ajar for this piece. And the commission, the reason I think, even though it affirmed two bars and remanded a third, the commission does so with the knowledge that Mr. Saliba has the right to appeal to this court or to the D.C. Circuit. So the so-called final action of the commission is only that. It's subject to change based upon the views of this court. So the SEC has to substantiate all three findings. It can't say, well, man, we barred them twice. That's good enough. So we're not worried about this third bar because the SEC is aware of the risk that its findings are going to be disturbed on appeal to this court. So it has to substantiate separately the rationale for the bar three separate times. We have taken you on the jurisdictional question through most of your time, but we would like to hear what you have to say on the merits. On the merits. And we will take so please tell us your position on the merits. What we're dealing with here on appeal is demonstrating that the SEC erred in barring Mr. Saliba for three different things, for violating the interim restrictions that were imposed on him by FINRA in connection with his application to acquire this broker-dealer, the bar for backdating compliance documents, and the bar for providing false testimony regarding his use of a computer and then failing actually to supply a so-called second computer. Although that computer that was buried in the issue that they remanded. Well, no, the remand has to do with his alleged provision. I understand that, but that seemed to have been under a single number that was both the computer and apparently allegedly false signatures on the memos. Right. Well, because in the complaint, when the Department of Enforcement glommed together the 8210 violations, some of which were based on... But no, I understand the remand was only with respect to whether or not it was a no or should have known. Yes, with regard to the falsity of these supervised remand. Interim restriction, that's an easy one. Mr. Saliba was essentially set up to fail by FINRA. Well, he was set up to do only certain things and then he did a lot more than what he was supposed to do. The evidence is pretty clear. Well, the problem is he was a principal when he applied to buy the firm. Let me stop you right there. The fact that he was a principal doesn't give him a license. I mean, he's allowed to put his money into the business. But the premise of his argument, and it's evident in your brief, is that having invested in the business, being the owner of the business, that meant he was a principal and had to be allowed to run his business. And I think the that requires being a member of FINRA and being licensed and they haven't said, OK, then what is it that gives him the right to decide, well, it's my money, so I'm going to run the business even though I'm not licensed? Well, it's not, Your Honor. The problem is that FINRA let him do certain things that require principal registration. I hear those arguments, but I got to tell you, it doesn't seem very persuasive to me. His argument that he was led to do certain things sounds to me like about a kid who sounds like he thinks he hears permission from his mother to do something and is now called for account because the mother didn't say that, and he knew that the mother didn't say that, and yet he did what he wanted to do anyway. Why isn't that what we should say in this case? Well, if we were talking black and white, perhaps you'd have an argument, but we live in a world of gray when it comes to these interpretations of conduct that requires principal registration. Here's a perfect example from the record. Mr. Saliba informed the folks at FINRA that he was going to be hiring a new CEO, a replacement CEO. FINRA heard CCO, Chief Compliance Officer, not Chief Executive. And he corrected that when? Immediately, in an email that's in the record. But the point, Your Honor, is this. When he told FINRA I'm going to be hiring a new CEO and FINRA heard CCO, what FINRA didn't tell Mr. Saliba was hey, Mr. Saliba, you can't hire anybody. You are restricted by these interim restrictions from doing something like that. They said, okay, thanks for telling me. When FINRA communicated with Mr. Saliba, they addressed him by his title, which was Chairman. The fact of the matter is, during the entire process of the CNA, FINRA was using Mr. Saliba as its point of contact and the person with whom they were negotiating, if you will. Can I interrupt for just a minute? As I read the record, the MAP allowed Saliba to do two things. Act on a limited capacity to approve things like invoices, pay bills, write checks, and two, add two additional support personnel. Those are the things that he was specifically allowed to do. He was not allowed to do anything else. And he did a lot of other things. Wrong? I mean, that's how I read the record. He did a lot of other things beyond those two things that he was specifically allowed to do. I agree, but I would say, but he did those other things with FINRA's knowledge and with FINRA's blessing, notwithstanding the imposition of the... So where does the blessing part come in? The fact that FINRA was, they called him by the title Chairman. They communicated with him. They knew who was the owner. They knew he was the continuing controlling interest in the firm. These are all things that... That does not sound like a blessing to me. When you've got very things you can do, and then they might address him by giving him a courtesy title, saying, you are the CEO. We recognize this. But also, by the way, during this intervening period, the only things you can do are X and Y. I'm afraid I don't get the argument. Well, again, I would cite in the record the testimony of Mr. Joe Shearer, who at the time, he'd moved on to a different position within FINRA by the time... He was also found not to have... Wasn't there also a credibility determination on him? There's credibility determinations across the board. Of course, you're on with every testifying. It was that he was not credible. Right. Look, that doesn't mean it's in stone. We all understand the burden I face to argue credibility issues on appeal, but that doesn't mean they're not reviewable and they cannot be overturned. I believe that the witnesses that were produced by the... They can only be overturned if there's a serious abuse of discretion, and that would be a huge hill for you to climb in this case. My point on the interim restrictions is that Mr. Saliba was trying to navigate this area between principal activities that FINRA knew he was doing and let him do, yet we're still outside the scope of the interim restrictions. You mean... Wait a minute. I don't want to take up this time. This may be hopeless. You say let him do. What do you mean let him do? They specifically said you can do A and B. He did three. Well, they didn't send out a cop to arrest him, but I'm not sure what you mean by let him do. What FINRA did not do was to advise Mr. Saliba that... The example I gave is a perfect one. Mr. Saliba informed the folks in MAP that he was hiring a new... And you could fill in CEO or CCO. FINRA said, thanks. What they didn't say was, hey, Trevor, you can't do that. This is outside the scope of the interim restrictions, which require you only to handle financial issues and hire two additional people. So again, let me wrap up the interim restrictions by this. This is a 2010 violation, which is essentially the ethical rule that governs all conduct with FINRA member firms and individuals who are associated with FINRA member firms. It is FINRA's independent burden to demonstrate that Mr. Saliba demonstrated bad faith. And I believe the evidence supports the conclusion that not only was he not operating in bad faith, but he was operating in good faith. He reached out to the MAP folks and said, hey, this interim restriction that you imposed on me, given the context, I'm the owner of a small firm. I write the checks. The fact that I can't do these things makes my job essentially impossible. And FINRA recognized that and they said, all right, we'll back away from a total restriction on principal activities and we'll let you do this. FINRA's not shy of telling people what they can and can't do. So I understand your point, Your Honor, is that FINRA, when I said they blessed it, they blessed it by inactivity, if you will. I'm way over time. I can continue on the other issues. All right. I think we will give you an opportunity at rebuttal after we've heard from the commission, but I think we have your case in hand. Thank you. Thanks to your argument and your brief. And so now we'll hear from the commission. Good morning, Your Honor. It may please the court. I'm Carrie Dingell on behalf of the Securities and Exchange Commission. So I'll start by also addressing the court's jurisdictional question. We largely agree with the petitioner that this is a final order for review purposes. There were three bars. The commission upheld two of those bars. And so just as a practical matter, Mr. Shaliba is currently barred. As a practical matter, could the commission rethink its prior rulings? Or would, even if they had doubts about them, would they say, we can't do anything about it because that was already done? As a practical matter, the commission will not. These are definitive. The commission has definitively and finally ruled on those issues. And the statutory review structure is very, you know, it's set in stone by the statute. So I think there would have to be another FINRA action in order for the commission to be able to take action on that. So they would say, is it important that this has gone up to appeal? I mean, is there something that makes it more final once it's gone on appeal? Could they say, if we still had it in our lap, maybe we could rethink it. But now it's all in the appeal. It is final. It's moved out of us into someone else. Is that a key fact in finality? I think that that's possible, that they could potentially still consider the order if it was before them. But once they issued the order and it went up on appeal, it's not currently before the commission. So is there any law, any precedent on this issue that you know of? Not directly. But this court, in general, in determining when an agency action is final, looks at the Supreme Court's opinion in Bennett v. Speer, which is a two-factor test. The first factor is whether the action marks the consummation of the agency's decision-making process. And the second is whether legal consequences flow from it. So Mr. Sliva is currently barred. And there is no question that both of those factors are met, at least with Can we safely say he is permanently barred based on those two? Or is he barred because we're in the midst of an appeal? Your Honor, he is permanently barred, unless this court were to overturn those bars. That's for the first two issues. You're saying they're severable, unlike if we used an analogy of final judgment from the appeal of a regular district court. So you say those two are final. Let's go to the third issue. On the third issue, the commission has said, you broke, you were in violation, but we haven't yet decided what the remedy is going to be. Is the first half of that third issue, you are in violation. Is that a final decision? Or is that one still open? That is, can we hear the repeal on the first two, because they're complete, as you've said, but not the violation issue on the third, on the computer related stuff, and backdating? Judge Ebel, I think that's, that is a closer question. And, you know, this court has said that it looks at that two factor Bennett v. Spear test pragmatically and flexibly in the Oregon Natural Desert Association v. United States Forest Service case. And so looking at it pragmatically, you know, that is a closer question, I think, but it's my understanding that that is also a definitive final ruling by the commission. The commission has determined that Mr. Saliba committed the Rule 8210 violation by falsely testifying about his computers and failing to overturn a computer to FINRA. And so, you know, looking at it pragmatically, we think that it makes sense for the court to go ahead and consider that violation, given that it's already considering the other two bars, because doing so will give FINRA certainty in the remand that's currently before FINRA about what violations it's considering in coming up with a new sanction. And if we, if we, if we, I mean, if we're looking at pragmatism, it seems to me one of the issues of pragmatism is what is the pragmatic consequence if we don't take the review? And if we don't take the review, is the pragmatic consequence that Saliba will have lost his chance to challenge on appeal those first two issues? Because the commission in its new order will say, when I, when we issue this third order, it is only on one limited issue, that is the damages on issue number three, the remedy on issues number three, not damages. And, and that those other the end of it, I mean, is that a potential consequence, pragmatically, if we say those, those first two issues, or more difficultly, those first two and a half issues are final? Yes, Your Honor, I think the first two issues, the court must review, because he is currently barred. And so even if you analogize it to a district court proceeding, you can always appeal an injunction, for example, which I think would be the closest corollary to a bar. This is not a monetary sanction. It is, you know, he is barred from associating with a FINRA member. And so I think with respect to the first two issues, there's no question that the court should review that. With respect to the Rule 8210 violation, I believe, you know, if, if FINRA rehears the other violation, looks at the other violation, clarifies the basis for that violation, and issues a new sanction, that the commission in reviewing that order could take a second look at the Rule 8210 violation. And then that would also be before this court on a second petition. So pragmatically, there is a pragmatic explanation in the Supreme and the Ninth Circuit have said, you look at this pragmatically. And so we don't want to get too wrapped up in our own suspenders, I suppose. But, but as to that third issue, pragmatically, there is still a possible possibility that FINRA could rethink the liability on, on the computers and the backdating. I think that it's possible, but it, the commission has upheld that, that Mr. Spaliba committed that violation. So I don't, I think it's unlikely that FINRA will take a second look at whether that violation was committed. Unlikely, but we, I suppose, if we decided on that third issue, we don't have jurisdiction, and we're not going to follow the final judgment order in normal cases, because we're supposed to be pragmatic. And pragmatic says you deal with the things that are really truly final, and maybe not the others. I suppose our order could say that third issue is still open, and we're establishing Ninth Circuit precedent that when the, when the, or when the relief or the determination is made on that, you can raise not only the relief issue, but the liability issue as well. I guess if we say it, why, in the Ninth Circuit, that's, that's what can be done. I think that the, the, this court could certainly remand that finding of that violation for reconsideration, and then it would be open. I think otherwise. But what, what if we don't want to remand? What if we think that the finding of violation was sufficient? And so it's, it would be artificial for us to remand and say you got it wrong. What if we want to say you got it right, but can we, can we say that? Yes, Your Honor, I think you can. I think you can say the violation stands, and then FINRA in its remand that it's currently taking a look at will address the sanction for that violation at that point. Dramatically at that point, then Mr. Saliba will have had his appeal on two and a half issues. He will have had all his appellate consideration, and it leaves open then only the review for the final issue, which truly isn't final yet. Correct. The sanction on the third issue is not currently being reviewed by this court, so that there is still a possibility of, you know, a second petition. But I think what the, the pragmatic reason to take a look at the 8210 violation now is that it heads off the possibility of a third petition. Because if the court says we're not going to review it for jurisdictional reasons, then what could happen is that FINRA could review the other violation. It takes the Rule 8210 violation that's been found as definitive, comes up with a sanction, and then that goes up to the commission, potentially up to this court. And if at that point this court said, well, we disagree that there was a Rule 8210 violation on the basis of the computers, then it would have to go back for a third level of review. And I suppose at that point the commission would say, why the heck did you even give us an issue that you may not ever reach? If you didn't find a violation, we wouldn't ever have reached the damages. Why did you remand for damages if we may not even need to reach that? I think it is a matter of this court's discretion, but that is a potential consideration for pragmatic purposes. And once again, do you agree with the appellant that there simply is no precedent on this that you could find? There is some precedent where there's only been one violation, and there's a sanction, and no sanction has been imposed, where courts have said that's not a final order because no There's a second circuit case. Can I interject for just a minute? I want to address what you're calling the 8210 violation, and that's providing false or misleading information about the laptops, about the memos, and so on. If that were the only thing that the SEC had addressed, if we didn't have the other two bars, if the only thing that happened was those things about the computers and about those and the forgery, and the SEC had said, well, we're sending that back because we've got a question as to no or should have known as to the standard applied, and we need clarification. And we are not on this ground imposing any bar. I don't think that's a final order. Certainly, by analogy to the APA, you need a final action. There's no action here. So if we were to consider that all by itself, I don't think we'd have jurisdiction to decide even the laptop question, even though that's not why they sent it back, because the action is the bar. And on that one, they've declined to impose the bar. And we don't know whether it's the only thing they found that was a violation was with respect to the laptop, they would impose the bar. Sending it back without imposing the bar based only on the laptop suggests that they think that the computer problem is not in itself enough to be the bar. So I don't see how we have jurisdiction over the computer, the second computer question under the 8210. I understand why we would have jurisdiction over the other two issues as to which the SEC has sustained the bar. I get that. But with respect to the laptops, where they've sent that entire 8210 violation back, I don't see how we have jurisdiction because there's no final action with respect to that. Your Honor, I would agree that that is a much closer question. And if that were the only violation, it's likely that the court would not have jurisdiction. I think looking at it pragmatically, though, because the court already has to review the other two bars in the order, the court can review the final order. And that is a definitive statement of the commission's position that he committed that violation in the final order. So I think it is a close question whether the court takes a look at that violation. But as I said, the court needs to review the other two bars regardless. But the other two bars are different facts. Those could be affirmed or reversed or dealt with finally by us without ever addressing the second computer issue at all. Of course, we've also got the backdating issue. I mean, that's also part of this last Netherland issue. And we haven't really focused on that at all. I mean, there's no remand on that part, is it? No, Your Honor. The interim restriction violation and the backdating violation and the bars associated with those are final. So that part of that third issue has been definitively ruled upon, too. I mean, calling it a third issue is completely arbitrary. There's no reason it's not four issues or issue 3A and 3B. Correct. So if there are no further questions on the jurisdictional question, I'll Give you a shot at the merits. I'll just briefly touch on the merits. I think Judge Clifton, you're correct that he acted like a principal in many ways. And you can sort of nitpick particular actions that he took. And did FINRA do enough to let him know that he was doing the wrong thing at the time? But if you take a step back and look at the full context, he received a letter from FINRA that said he could not act as a principal because FINRA had learned that the commission was also concurrently investigating his investment advisor firm. And he looked up the definition of principal and then testified that he did not change anything with respect to how he was acting. There's also testimony in the record from the former CEO that Mr. Saliba ran the show. He was in charge. The CEO did not have the powers of a traditional CEO. Mr. Saliba really made all of the decisions. And he did not change anything with respect to how he was running the firm. And if you look at the commission's opinion in the beer bomb matter, it's similar. And it makes it clear that FINRA's role is to protect investors. And FINRA did so here by issuing interim restrictions that it believed were necessary to protect investors. FINRA's job is not to tell Mr. Saliba how he can still conduct his business. That's Mr. Saliba's job, to figure out how he can still conduct his business. And what often happens in these situations is that, you know, the principal will appoint someone else to run their business while the interim restrictions are in place. In the beer bomb matter, the commission said that Mr. Beer Bomb should have found someone else to file compliance documents. It wasn't sufficient for Mr. Beer Bomb to just say, well, I had to file the compliance documents because there was no one to do it. Historically, how long do these interim restrictions tend to last? I mean, do they tend to be perpetual, or do they have lifespans, or what? No, Your Honor. They are interim restrictions while FINRA is reviewing the continuing member application. I mean, is that defined in the matter of a year or less, or a year or more? I'm not sure if there's a particular time limit on it, but there is a review process where if someone who has interim restrictions against them can challenge the interim restrictions during their pendency. Historically, historically, how long would it take for the commission to finally enter a final order? Not in this case, but just historically. So the continuing member application is a FINRA process, and I'm not sure how long FINRA normally takes. And then if someone is aggrieved by an order of FINRA, they can appeal it to the commission. So if that doesn't normally happen with respect to interim restrictions, there's an internal FINRA process for figuring out if the interim restrictions should be altered. But if the interim restrictions are made final, then that is an order that can be appealed to the commission. And I'm not sure how long that takes. But I will note, this is really the fourth layer of review. So FINRA heard this case in the first instance. There's an appellate body within FINRA, the National Adjudicatory Council. Then the commission takes a look at it, and this court is the fourth layer of review. So to the extent that it looks like the process takes a long time, there are investigations that happen, and then there are multiple layers of review. Unless the court has any further questions, we would ask that you deny the petition. Thank you. No further questions. Thank you for the argument. Mr. Wolpner? I'll be brief. Judge Ebel, just to answer your last question about the time frame, the MAP process states under the rules that FINRA's decision is due 180 days from the date that it deems the application to be substantially complete. It doesn't always meet that time frame. They can ask for extensions. But if they impose an interim restriction in the context of a continuing member application, those restrictions will stay in place until FINRA issues its final decision. Thank you. Look, I would disagree with Ms. Dingell about FINRA's job. FINRA's job is to provide clear direction to its member firms in every context, in terms of the rules it's issued, the interpretations of its rules, and in the imposition of an interim restriction. When FINRA issued these interim restrictions on Mr. Saliba, it was confusing to him. He didn't disregard this. Whatever the opposite of cavalier is, is what he was. Wait a minute. What is so confusing about you've got a limited capacity, you can improve invoices, pay bills, write checks, and contribute personal capital, and you can add two additional support personnel? That seems to me quite clear. What's confusing about that? There's nothing confusing about that. What is confusing about the myriad other things that principals do at broker-dealers, especially when you... Well, no, that's not confusing at all. He's allowed to do these two things. He can't do anything else. Bingo. I don't find that confusing. I hear you. But for instance, let's say one of the things that FINRA hung its hat on in the commission then was Mr. Saliba's involvement in the hiring of people, right? You don't have to be a principal to be involved in interviews with potential new employees. Mr. Saliba did that. He wasn't merely involved. He actually approved. I mean, he was the hiring person, correct? No, Your Honor. The record would reflect that Mr. Saliba testified that while he would talk to the applicants, the final decision was approved by firm management in the form of the CEO, Mr. Jim Miller. Is there a testimony? Mr. Miller said that he wasn't the one actually running the firm, and his testimony was accepted as credible. Mr. Miller's testimony was deemed credible, but Mr. Miller said a lot of things that were belied by other evidence in the record, including documentary evidence that showed he was in fact involved in the management of the firm, notwithstanding his sworn testimony to the contrary. So anyway, the point is that I was making is FINRA does have a duty to its members to provide clear guidance. So when Ms. Dingell says that it's not FINRA's job to do that, it is in fact FINRA's job. And Mr. Saliba did his job, which was to reach out to FINRA to seek and hopefully obtain guidance on the scope of his permissible activities. And when FINRA didn't speak in certain respects, as I gave that example of the hiring of the new CCO, I think it's reasonable for Mr. Saliba to conclude that FINRA, A, was aware of what he was doing, and B, was okay with it. And that colors lots of things that he was doing. I'll just end on this. With regard to the 2010 violations, right? This has got to do with the violation of the interim restrictions and the submission of the back data compliance documents. Those are both simply 2010 violations, right? Which means that FINRA had an obligation to demonstrate, affirmatively demonstrate bad faith on the part of Mr. Saliba. In the absence of that, then they haven't proven their violation. With that said, that's a factor that also goes into the computation or the determination of the appropriate remedial sanction. We're dealing with three bars here, which is the equivalent of the death penalty for somebody like Mr. Saliba, who's in the brokerage industry. He can't work with another FINRA member firm, and it's got consequences that go beyond FINRA membership. There's other things that he's precluded from doing under Dodd-Frank as a consequence of these bars. In the absence of bad faith, I would certainly argue that you should vacate the findings of liability that were found by FINRA and then approved by the SEC. But if you won't do that, at a minimum, you should revisit sanctions or remand back to the commission so it can revisit these bars to determine whether, in light of the lack of evidence produced by the Department of Enforcement in the FINRA hearing, demonstrating affirmatively bad faith on the part of Mr. Saliba, why a permanent bar is the only appropriate remedial sanction. You could suspend them for two years and short of a bar, and that could be deemed to be appropriately remedial. We would argue the evidence has ample opportunity for that. Counselor, do you think FINRA can only impose sanctions if that is the only possible sanction? I mean, do they have a duty to impose the least restrictive sanction? No, no. I don't know if Your Honor is familiar, but FINRA has published what they call their sanction guidelines, the key meaning guidelines. So for their most popular rule violations, if you will, they have published a range of appropriate sanctions. And where you fit within the spectrum of potential outcomes If they find the violation is of long duration and intentional, they can impose the bar. They can do that. This entire case is not about what FINRA and the SEC can do. It's what they should have done under the circumstances. And I think the facts we would argue mandate a conclusion they should not have barred Mr. Saliba. In the absence of any further questions, I thank you all for your time. We thank you. We thank both counsel for the helpful arguments in this complicated case. And we're apologizing for sending you to federal courts class on the jurisdictional issue. But the Supreme Court does that to us sometimes. So misery loves company. With that, the case is submitted. That concludes our calendar for today. And we're recessed.
judges: Ebel, FLETCHER, CLIFTON